Filed 12/13/24  Kay v. Pick CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JAMES A. KAY, JR., et al., | B330108 |
| Plaintiffs and Respondents, | |
| v. | Los Angeles County Super. Ct. No. 23STCV01142 |
| HAROLD PICK, | |
| Defendant and Appellant. | **ORDER MODIFYING OPINION** **[No Change in Judgment]** |

THE COURT:

The opinion herein filed on December 6, 2024, is modified as follows:

In the paragraph that begins at the bottom of page 10 and continues on page 11, the second and third instances of "[Kay]" are deleted and replaced with "[Pick]", so that the paragraph reads:

> Here, the trial court found malice on the following
> facts:  "The vast quantity of prior cases between
> [Pick] and [Kay]—some cases going back more than
> two decades—are more than sufficient evidence that

> [Pick] could be acting because of actual malice and/or malice by instituting proceedings for another improper purpose.  Indeed, [Pick] begins his [anti-SLAPP] Motion by calling this action a 'war for vindication based on true belief and intent of being wronged' and cites the Hatfields and McCoys—a well-known reference to two Appalachian families who fought and killed each other for decades."

There is no change in the judgment.

_____

GRIMES, Acting P. J.　　　WILEY, J.　　　VIRAMONTES, J.

Filed 12/6/24  Kay v. Pick CA2/8 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JAMES A. KAY, JR., et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>HAROLD PICK,<br><br>    Defendant and Appellant. | B330108<br><br>Los Angeles County<br>Super. Ct. No. 23STCV01142 |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael P. Linfield, Judge.  Affirmed.

Harold Pick, in pro. per., for Defendant and Appellant.

Timothy D. McGonigle for Plaintiffs and Respondents.

_____

This is an appeal from an order of the trial court denying a special motion to strike made by defendant Harold Pick pursuant to Code of Civil Procedure[1] section 425.16 (the anti-SLAPP statute).  Pick[2] made the motion in response to the complaint of James A. Kay, Jr., and his affiliated entity Lucky's Two-Way Radios, Inc. (together, Kay) against Pick and Pick's attorney, Levi Lesches, alleging Pick and Lesches maliciously prosecuted a lawsuit (the RICO action) against Kay in federal court.  We agree with the trial court that Kay met his burden of showing a probability of success on the merits of his claim for malicious prosecution.  We therefore affirm.

## BACKGROUND

Pick, through Lesches, commenced the RICO action in 2019.  It is just one of many legal actions involving Pick and Kay as opponents.  The proliferation of litigation stems back to the early 1990's.  We discuss this history only to the extent necessary to frame the current proceedings.

Pick and Kay were competitors in the field of radio communications.  In 1992, Pick and his late father made a complaint to their industry regulator, the Federal Communications Commission (FCC), that Kay was violating FCC

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     We refer to the parties by their names instead of our usual practice of using party designations.  We hope to limit confusion in the context of the parties' extensive litigation history in which one or both has, at times, been plaintiff, defendant, judgment debtor, judgment creditor, bankruptcy debtor, bankruptcy creditor, appellant, appellee, petitioner, respondent, and perhaps more.

rules.  The FCC investigated and ultimately revoked Kay's licenses used in the operation of his two-way radio service. Shortly after Pick and his father made their initial report to the FCC, Kay sued them for slander.

More Kay lawsuits followed against Pick and related persons, including Pick's mother.  Over the years, Pick and his mother each filed for bankruptcy protection, leading to still more litigation involving the parties.

Kay was not the only one who ever sued Pick.  Motorola, a radio manufacturer whose products Pick used in his business, obtained a $1.2 million judgment against him in 2005 for copyright infringement.  Pick was found in possession of unlicensed Motorola software.  Pick did not satisfy this judgment, and Motorola allowed it to lay dormant for a time.  This changed in 2014 when Motorola renewed its judgment and began aggressive enforcement.

Kay was behind Motorola's sudden insistence on Pick satisfying its judgment against him.  Kay had entered into an agreement with Motorola whereby he would fund and control the enforcement of judgment actions and Motorola would receive all proceeds.  There was no direct economic benefit to Kay. According to Pick, Kay was motivated solely by his decades-long vendetta against Pick for reporting Kay to the FCC—he wanted to make good on his long-standing threat to render Pick and his family "homeless."  Kay assisted Motorola in commencing three enforcement actions against Pick and related persons (the Motorola actions).  Motorola prevailed in one of these actions.  It was found to lack standing in the second, and the third was adjudicated against Motorola.

3

In 2019, Pick, through Lesches as his counsel, filed the RICO action in the United States District Court for the Central District of California (district court) against Kay, Motorola, and various related persons not relevant to this appeal. The initial complaint contained a single count against Kay and Motorola for violation of section 1962(c) and (d), respectively, of title 18 of the United States Code, part of the Racketeer Influenced and Corrupt Organizations Act (RICO; 18 U.S.C. §§ 1961–1968). The basis for RICO liability as to Kay was that he funded three lawsuits by Motorola against Pick and related persons (including Pick's mother) in retaliation for Pick having reported Kay to the FCC in 1992. This, Pick contended, violated section 1513 of title 18 of the United States Code, part of the Victim and Witness Protection Act (§§ 1512–1515). The initial complaint made no mention of the bar to Pick's claims imposed by the *Noerr-Pennington* doctrine,[3] even though it is the plaintiff's responsibility to address it. (*Boone v. Redevelopment Agency of San Jose* (9th Cir. 1988) 841 F.2d 886, 894.)

Later, and again through Lesches, Pick filed a first amended complaint in the RICO action, this time acknowledging Kay and Motorola's *Noerr-Pennington* defense and listing nine reasons Pick and Lesches thought it inapplicable.

On Kay and Motorola's motion, the district court dismissed the RICO action as barred by *Noerr-Pennington*. At the same time, it denied on procedural grounds Kay's motion for sanctions for Pick's allegedly frivolous complaints in the RICO action. The

---

[3] Established by the decisions of the United States Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961) 365 U.S. 127 (*Noerr*) and *Mine Workers v. Pennington* (1965) 381 U.S. 657 (*Pennington*).

4

Ninth Circuit affirmed dismissal in a short memorandum opinion, *Pick v. Kay* (9th Cir. Jan. 21, 2022, No. 20-55804) 2022 U.S.App. Lexis 1766.

In turn, Kay sued Pick and Lesches (and, again, affiliated parties not relevant to this appeal) for malicious prosecution. Kay alleged the RICO action lacked probable cause because his funding of the Motorola actions was "absolutely privileged under the *Noerr-Pennington* doctrine, as made clear by [binding Ninth Circuit authority]."

Pick and Lesches each filed special motions to strike pursuant to the anti-SLAPP statute. The trial court denied both. This appeal concerns only its denial of Pick's motion.[4] While the trial court necessarily found prong one of the anti-SLAPP analysis was satisfied—the suit was brought on account of activity in furtherance of constitutionally protected rights of petition or free speech (§ 425.16, subd. (b)(1)), it found Kay satisfied his prong two burden to show a probability of prevailing on the merits of his malicious prosecution cause of action (*ibid.*).

Pick timely appealed denial of his anti-SLAPP motion.

## DISCUSSION

### 1. The Anti-SLAPP Statute and Standard of Review

The anti-SLAPP statute provides a procedure for courts "to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235.) It broadly applies to causes of action "arising from" specified

---

[4]     The trial court's denial of Lesches's companion anti-SLAPP motion is the subject of a separate appeal, No. B330105. We affirm that decision in a contemporaneous opinion.

protected activity: "any act of [a] person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).)

A defendant moving to strike under the anti-SLAPP statute must "make an initial prima facie showing that plaintiff's suit arises from an act in furtherance of defendant's right of petition or free speech." (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1042–1043.) This is sometimes called the first anti-SLAPP prong. If this burden is met, the plaintiff must establish a reasonable probability he or she will prevail on the merits—the second anti-SLAPP prong. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 824–825, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.) In doing so, the plaintiff may not rely exclusively on his complaint but must proffer admissible evidence that, if accepted by the finder of fact, would suffice to sustain a judgment in his favor. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*).)

We review the trial court's resolution of an anti-SLAPP motion de novo. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.)

## 2. Analysis

There is no question Kay's malicious prosecution lawsuit against Pick for filing the RICO action arises from petitioning activity protected under the First Amendment to the United States Constitution and falls within the purview of the anti-SLAPP statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 & 736, fn. 5 ["the right of access to courts is an aspect of the First Amendment right of petition"].) The first prong of the anti-SLAPP analysis is satisfied.

6

Thus, the issues on appeal are limited to whether Kay has, in satisfaction of the second step of the anti-SLAPP analysis, demonstrated a reasonable probability of prevailing on his malicious prosecution cause of action. This cause of action requires Kay to establish that the RICO action was "(i) initiated or maintained by, or at the direction of, [Pick], and pursued to a legal termination in favor of [Kay]; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).)

### a. Malicious prosecution—favorable termination

Pick first disputes that the RICO action terminated in Kay's favor. According to Pick, dismissal of the RICO action on *Noerr-Pennington* grounds is merely procedural, and therefore does not reflect on the merits of his RICO claim. We agree with the trial court that the RICO action terminated in Kay's favor for malicious prosecution purposes.

*Noerr-Pennington* is substantive, not procedural. (See *Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 679 ["the *Noerr-Pennington* doctrine is a doctrine of substantive law which shields defendants from liability based on their legitimate right to petition government officials"]; see also *Berman v. RCA Auto Corp.* (1986) 177 Cal.App.3d 321, 324 ["Procedural defenses do not absolutely shield a defendant from liability."].) While we are cited no authority addressing whether termination on *Noerr-Pennington* grounds is favorable for malicious prosecution purposes, we agree with Kay that *Berman* is dispositive. There, a malicious prosecution case was allowed to proceed on an underlying defamation action that was resolved on the basis of the litigation privilege (Civ. Code, former § 47, subd. (2)). It

7

explained that the litigation privilege was a substantive defense that imposed a "bar to liability designed to protect the rights of the individual speaker, to insure that nothing will impede [his] access to the courts." (*Berman,* at p. 325.) It held that this immunity went to the underlying merits of the action—and thus the "innocence of the defendant" so as to satisfy the requirement of favorable termination—because it broadly established, without need for "individual assessment of a particular case," that "suits based on privileged statements are suits which are without merit." (*Ibid.*) Pick offers no reason for us to view differently suits based on conduct immunized from liability under the *Noerr-Pennington* doctrine.

### b. Malicious prosecution—probable cause

"[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.) A claim is not legally tenable if a litigant either " 'relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) A legal theory is untenable when any reasonable attorney would agree it is totally and completely without merit. (*Parrish*, *supra*, 3 Cal.5th at p. 776.) What the defendant knew, as relevant to his ascertainment of whether his cause of action was tenable, is a question of fact. (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 538.)

In his opening brief, Pick does not dispute that the RICO

action lacked probable cause. However, he suggests he may have an advice of counsel defense. He cites *Brinkley v. Appleby* (1969) 276 Cal.App.2d 244, 247 which states: "where the defendant solicits the advice of an attorney and makes a full and fair statement of all material facts with respect to an alleged criminal charge, and *in good faith* accepts the advice of counsel that he has a meritorious cause, it must be presumed that he has 'made out a complete defense to the action.' ' "Reliance upon the advice of counsel, provided it is given in good faith and is based upon a full and fair statement of the facts by the client, may afford the latter a complete defense to an action for malicious prosecution." ' "

In considering this argument, the trial court noted "[n]one of the documents [Pick] submits as evidence include anything that he sent to his counsel, that his counsel sent to him, or that would otherwise be evidence of his good faith reliance on his counsel's legal advice." On appeal, Pick cites no evidence he offered in support of his advice of counsel defense. It was Pick's burden to address this issue on appeal, and he cannot show error without doing so. (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557 (*Yield Dynamics*) [burden is on appellant to affirmatively show prejudicial error based on adequate legal argument and citation to the record].)

Finally, on reply, Pick argues he had probable cause to prosecute the RICO action in spite of *Noerr-Pennington*. This argument is forfeited. (See *Sweetwater, supra,* 36 Cal.App.5th at p. 987.) Even if it were not, it would fail. Pick's argument is simply that there are, or previously have been, points of disagreement about the function and application of *Noerr-Pennington*. However, he fails to relate these points of

9

disagreement to the facts of his case.  In affirming dismissal by the district court, the Ninth Circuit allowed no uncertainty that, under its binding precedents, the RICO action was barred by *Noerr-Pennington*.  (See *Pick v. Kay*, *supra*, 2022 U.S.App. Lexis 1766.)  Pick acknowledges none of these precedents nor the reasons for dismissal.

For these reasons, Pick fails to show error in the trial court's determination that Kay made a prima facie showing Pick prosecuted the RICO action without probable cause.

### c.      Malicious prosecution—malice

" 'The malice element of the malicious prosecution tort goes to the defendant's subjective intent . . . . It is not limited to actual hostility or ill will toward the plaintiff.'  [Citation.]  It can exist, for example, where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.  A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other, additional evidence.  [Citation.]  Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

Here, the trial court found malice on the following facts: "The vast quantity of prior cases between [Pick] and [Kay]—some cases going back more than two decades—are more than sufficient evidence that [Kay] could be acting because of actual malice and/or malice by instituting proceedings for another improper purpose.  Indeed, [Kay] begins his [anti-SLAPP] Motion by calling this action a 'war for vindication based on true belief

10

and intent of being wronged' and cites the Hatfields and McCoys—a well-known reference to two Appalachian families who fought and killed each other for decades."

On appeal, Pick glosses over the acrimonious history between him and Kay. He says he "respectfully notes that there are [*sic*] a plethora of allegations in this matter ranging from actions of Pick's father in the 1990s to third party actions that do not involve any of the RICO Respondents [*sic*] against Kay. Rather than be swept up in a whirlwind of childish and pejorative rendition of litigation by the parties for the last thirty years, [Pick] opts to address the pertinent issues only, in an attempt to present a rational view of pertinent facts." But the history *is* pertinent. It was the basis for the trial court's determination Kay made a prima facie showing of Pick's malice. By not discussing it, much less showing it lacks relevance, Pick again fails to show error. (*Yield Dynamics*, *supra*, 154 Cal.App.4th at pp. 556–557.)

## DISPOSITION

We affirm the trial court's denial of Pick's special motion to strike under the anti-SLAPP statute. Costs are awarded to Kay.


GRIMES, Acting P. J.


WE CONCUR:


WILEY, J.


VIRAMONTES, J.


11